**PATTI, SGRO, LEWIS & ROGER**
Anthony P. Sgro, Esq.
Nevada Bar No. 3811
Stephen K. Lewis, Esq.
Nevada Bar No. 7064
Adam C. Anderson, Esq.
Nevada Bar No. 13062
720 S. 7th Street, 3rd Floor
Las Vegas, Nevada 89101
Telephone: (702) 385-9595
Facsimile: (702) 386-2737
aanderson@pslrfirm.com
    Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| NOAH L. BENNETT, JR., and ROSONNA GARVEY, husband and wife, on behalf of themselves and on behalf of all others similarly situated, | Case No.: |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| vs. | |
| LUMBER LIQUIDATORS, INC., a Delaware Corporation, LUMBER LIQUIDATORS LEASING, a Delaware Corporation,  LLC, LUMBER LIQUIDATORS HOLDINGS, INC.; a Delaware Corporation, LUMBER LIQUIDATORS SERVICES, LLC, a Delaware Limited Liability Corporation, DOES I through X, and ROE CORPORATIONS I through XV, | **DEMAND FOR A JURY TRIAL** |
| Defendants. | |

Plaintiffs Noah L. Bennett, Jr. and Rosonna Garvey ("Plaintiffs"), on behalf of themselves and all others similarly situated, by and through its attorneys of record, Patti, Sgro, Lewis, & Roger,  hereby complain of against Defendants, Lumber Liquidators, Inc. a Delaware corporation ("Lumber Liquidators Inc."), Lumber Liquidators Leasing, LLC, a Delaware corporation ("Lumber Liquidators Leasing"), Lumber Liquidators Holdings, Inc., a Delaware corporation ("Lumber Liquidators Holdings") and Lumber Liquidators Services, LLC, a

Delaware corporation ("Lumber Liquidators Services") (collectively referred to as "Lumber Liquidators", the "Company", or "Defendants"), and by this Complaint allege as follows:

## **INTRODUCTION**

1.      This is a proposed class action brought by Plaintiffs on behalf of themselves and the below-defined Class against Defendants to obtain damages and injunctive relief arising from and relating to their purchase and installation of Defendants' Chinese wood flooring material.

2.      Upon information and belief, Defendants' have engaged in a scheme to manufacture and/or import into the United States, and to falsely warrant, advertise, and sell Chinese Flooring that fails to comply with relevant and applicable formaldehyde standards, as well as Defendants' breaches of express and implied warranties with respect to the Chinese Flooring.

3.      Upon information and belief, Defendants continue to manufacture, import, sell, and/or distribute Chinese Flooring which emits excessive levels of formaldehyde, which is categorized as a known human carcinogen by the United States National Toxicology Program and the International Agency for Research on Cancer ("Hazardous Flooring").

4.      Further, contrary to Defendants' repeated, detailed representations that its flooring complies with strict formaldehyde standards on its product labels, website, and elsewhere, the toxic formaldehyde emissions from the Defendants' Hazardous Flooring is, upon information and belief, multiple times the maximum permissible limits set by those standards at the time of purchase.

5.      Defendants' illegal behavior with respect to its manufacturing, importing, marketing, distribution, and/or selling of Hazardous Flooring has caused Plaintiff and the other Class Members to suffer direct financial harm.  Plaintiffs' purchase is markedly less valuable because of its elevated level of formaldehyde.

/ / /

/ / /

### THE PARTIES

6.     At all times relevant hereto, Plaintiff, Noah L. Bennett, Jr. ("Bennett"), was a resident of Clark County, Nevada.

7.     At all times relevant hereto, Plaintiff Rosonna Garvey ("Garvey"), was a resident of Clark County, Nevada.

8.     Upon information and belief, Defendant, Lumber Liquidators, Inc. is a Delaware corporation with its principal place of business at 3000 John Deere Road, Toano, Virginia 23168. Lumber Liquidators Inc., is licensed and doing business in the State of Nevada.

9.     Upon information and belief, Defendant, Lumber Liquidators Leasing, LLC, is a Delaware Limited Liability Corporation with its principal place of business at 3000 John Deere Road, Toano, Virginia 23168.

10.     Upon information and belief, Defendant, Lumber Liquidators Holdings, Inc. is a Delaware corporation with its principal place of business at 3000 John Deere Road, Toano, Virginia 23168.

11.     Upon information and belief, Defendant, Lumber Liquidators Services, LLC, is a Delaware Limited Liability Corporation with its principal place of business at 3000 John Deere Road, Toano, Virginia 23168.

12.     That the true names or capacities, whether individual, corporate, association or otherwise, of Defendants DOES I through X, and ROE CORPORATIONS I through XV, is unknown to Plaintiffs, who therefore sues said Defendants by such fictitious names; Plaintiffs are informed and believe and therefore allege that each of the Defendants designated herein as a DOE and ROE CORPORATIONS are responsible for the manufacturing, importation, marketing, sales, distribution, and/or otherwise responsible in some manner for the events and happenings referred to and caused damages proximately to the Plaintiffs as herein alleged, and that Plaintiffs will ask leave of this Court to amend their Complaint, to insert the true names and capacities of DOES I through X, and ROE CORPORATIONS I through XV, when the same have been ascertained and to join such Defendants in this action.

## JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because (a) Plaintiffs, members of the Class, are citizens of Nevada and  Defendants are citizens of Delaware or Virginia, (b) there are certainly 100 or more class members, and (c) the aggregate amount in controversy will exceed $5,000,000.

14.     The Court has personal jurisdiction over Defendants because a substantial portion of the alleged wrongdoing occurred in Nevada. Defendants also have sufficient minimum contacts with Nevada and have otherwise intentionally availed themselves of the markets in Nevada through the promotion, marketing, and sale of products sufficient to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

15.     Venue is proper in the District of Nevada pursuant to 28 U.S.C. § 1391 (b)(2) and (3) because a substantial part of the events or omissions giving rise to the claims at issue in this Complaint arose in this District, a substantial part of the property that is the subject of this action is situated in this District, and Defendants are subject to the Court's personal jurisdiction with respect to this action.

## FACTUAL ALLEGATIONS

16.     Upon information and belief, Defendants expressly labeled and sold, during the class period, the Hazardous Flooring as being compliant with California Air Resources Board ("CARB") regulations and all applicable regulations and standards and specifically states "CARB   No.SCS-CARB-000090,   CALIFRONIA   93120   PHASE   2   Compliant   for Formaldehyde."

17.     CARB is an entity which has promulgated safety standards for the emission of formaldehyde for products sold in California.

18.     Defendants' Hazardous Flooring is not what it purports to be.

19.     Upon information and belief, the Hazardous Flooring contains a dangerous level of formaldehyde, which exceeds the CARB regulations in the State of California.

20.     Upon information and belief, the Hazardous Flooring contains a dangerous level of formaldehyde, which exceeds the standards promulgated in the Toxic Substances Control Act, 15 U.S.C. 2601 et. seq. (Title VI- Formaldehyde Standards of Composite Wood Products).

21.     Upon information and belief, the Hazardous Flooring is hazardous to human health.

22.     Formaldehyde can cause cancer, asthma, chronic respiratory irritation and other ailments including skin and breathing problems.

23.     Formaldehyde is the sort of toxic substance to which people may be exposed without knowing they are at risk.  Day after day, week after week, month after month, Plaintiffs live in their home, an enclosed place, where their flooring is emitting toxic cancer causing fumes.

24.     Upon information and belief, the Hazardous Flooring Defendants sold Plaintiffs and the Class Members poses great health risks.

25.     Upon information and belief, Defendants' marketing materials for the Hazardous Flooring contain false and misleading information relating to compliance with California standards designed to increase sales of the products at issue.

26.     Upon information and belief, Defendants deceptively manufactured, labeled, and sold the Hazardous Flooring.

27.     The Hazardous Flooring, having no monetary value, is worthless.

28.     Plaintiffs and the Class Members have been damaged by Lumber Liquidators' dangerous Hazardous Flooring and deceptive trade practices.

29.     Plaintiffs and the Class Members are entitled to a return of the full purchase price paid for the Hazardous Flooring, installation thereof, and other damages to be proven at trial.

**PLAINTIFFS' EXPERIENCE WITH DEFENDANTS' FRAUDLUENT SCHEME**

30.     On or about February 2015, Plaintiffs purchased the Hazardous Flooring.

31.     Particularly, Plaintiffs purchased Dream Home Kensington Manor Fumed African Ironwood 12mm laminate wood veneer flooring manufactured in China.

32. Upon information and belief, the Hazardous Flooring purchased by Plaintiffs contains toxic levels of formaldehyde, a known carcinogen.

33. Plaintiffs purchased the Hazardous Flooring from a Lumber Liquidators outlet at 4588 N. Rancho Dr. Unit 3, in Clark County.

34. The Hazardous Flooring purchased by Plaintiffs from Defendants was packaged with packaging that made certain fraudulent warranties and representations.

35. The Hazardous Flooring packaging purchased by Plaintiffs indicated that it was manufactured on or about September 30, 2014.

36. The Hazardous Flooring packaging purchased by Plaintiffs indicated that it was manufactured as Vendor/Mill Code: OCH.

37. Plaintiffs installed the purchased Hazardous Flooring in February and March 2015.

38. The Hazardous Flooring packaging purchased by Plaintiffs indicated that it was CARB compliant, and the label on the packaging was marked "CARB No.SCS-CARB-000090, CALIFRONIA 93120 PHASE 2 Compliant for Formaldehyde."

39. Plaintiffs relied on the representations of Defendants and Defendants' representatives, and the respective warranties on the Hazardous Flooring's packaging when selecting Defendants' Hazardous Flooring over all other brands of flooring.

40. Unknown to Plaintiffs, the Hazardous Flooring, upon information and belief, was defective in that it had high levels of formaldehyde present in the wood which eventually emitted toxic fumes into the locations where installed and other failures as described herein.

41. Upon information and belief, the characteristics of the Hazardous Flooring defect (the formaldehyde emissions) were present when the Hazardous Flooring left Defendants possession and were part of the design and manufacture.

42. Plaintiffs have suffered damages, including but not limited to economic losses, medical specials, general pain and suffering, and wage loss.

43. Plaintiffs' children have also suffered damages, including but not limited to medical specials, and general pain and suffering.

44.     Upon information and belief, the Defendants' manufacturing designing, importing, processing, distributing, delivering, supplying, inspecting, marketing and/or selling Hazardous Flooring was the result of a fraudulent scheme employed by Defendants to defraud Plaintiffs and those individuals similarly situated.

## COMMON ALLEGATIONS PERTAINING TO DEFENDANTS' FRAUDULENT SCHEME

45.     Upon information and belief, Defendants have sold, directly, or indirectly (through dealers and other retail outlets), tens of thousands of square feet of Hazardous Flooring in Nevada and throughout the Unites States.

46.     Defendants sell its Hazardous Flooring through third-party sellers or through its directly-owned showrooms.

47.     At the time of the sale, Defendants warranted that its Hazardous Flooring was fit for ordinary purpose for which such goods were used and was free from defects in materials and workmanship.

48.     Defendants have represented and warranted though various means, such as the packaging and website admissions that their Hazardous Flooring conformed to the applicable regulatory and CARB standards.

49.     These representations became part of the benefit of the bargain when Plaintiffs and Class Members, and/or their builders purchased the Hazardous Flooring, and/or assumed the warranty.

50.     In addition, these representations became part of the benefit of the bargain when Plaintiffs and/or Class Members purchased the product with Defendants' express representations concerning the quality of the Hazardous Flooring.

51.     Plaintiffs and Class Members relied on Defendants' warranty, published specifications, and/or advertisements regarding the quality of the Hazardous Flooring.

52.     Upon information and belief, the Hazardous Flooring does not conform to these express representations and warranties, and, as alleged herein, Defendants breached its express warranties and representation concerning the Hazardous Flooring.

53.     Upon information and belief, the Hazardous Flooring suffers from various design deficiencies which further discovery will establish in detail, including, excessive formaldehyde levels.

54.     Upon information and belief, the Hazardous Flooring emits excessive formaldehyde, which violates industry standards, including the applicable building codes, federal regulations, and CARB standards, as well as Defendants' express representations and warranties.

55.     Upon information and belief, the defects and deficiencies are due to fundamental design, engineering, and manufacturing errors well within Defendants' area of expertise.

56.     In addition to the express representation and warranties regarding the quality of the flooring discussed herein, Defendants also ship a Limited Warranty with its Hazardous Flooring.

57.     Defendants' shipping of the Hazardous Flooring with prior knowledge of the defects, or with negligent or reckless disregard of the presence of defects, constitutes a breach of its express warranty and makes the limitations of the Limited Warranty unconscionable in all respects, and therefore is void *ab initio*.

58.     The Limited Warranty is not a negotiated contract and is so one-sided that no reasonable person would ever knowingly agree to its terms if properly disclosed.

59.     Upon information and belief, Defendants have known of the Hazardous Flooring defects and have failed to honor their express and implied warranties, the Limited Warranty has failed to satisfy its essential purpose, and the limitations therein are null and void.  Further, the limitations contained in the Limited Warranty are not conspicuous.

60.     Upon information and belief, despite knowing of the defects in the Hazardous Flooring, Defendants have not notified all purchasers, builders, and/or homeowners with the Hazardous Flooring of the defect nor provided uniform relief.

61.     Plaintiffs and Class Members have not received the value for which they or their builder bargained when the Hazardous Flooring was purchased.  There is a difference in value between the Hazardous Flooring as warranted and the Hazardous Flooring containing the defect.

## CLASS ACTION ALLEGATIONS

62.     Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23.  The requirements of Fed. R. Civ. P. 23(a), (b)(2), (b)(3), and (c)(4) are met with respect to the classes defined below:

**INJUNCTIVE RELIEF CLASS**
**All persons and entities who purchased wood flooring from Lumber Liquidators Holdings, Inc., either directly or through an agent, that was sourced, processed, or manufactured in China.**

**DAMAGES CLASS**
**All persons and entities who purchased wood flooring from Lumber Liquidators Holdings, Inc., either directly or through an agent, that was sourced, processed, or manufactured in China.**

**(ALTERNATIVE) DAMAGES CLASS**
**All persons and entities in Nevada who purchased wood flooring from Lumber Liquidators Holdings, Inc., either directly or through an agent, that was sourced, processed, or manufactured in China.**

Excluded from the Classes are: (a) any Judge or Magistrate presiding over this action and members of their families; (b) Defendants, their affiliates, employees officers and directors, person or entitles that distribute or sell Defendants flooring; (c) all persons who properly execute and file a timely request for exclusion from the Classes; and (d) the attorneys of record in this case.

63.     *Numerosity*: The Classes are composed of thousands of persons geographically dispersed, the joinder of whom in one action is impractical.  Moreover, upon information and belief, the Classes are ascertainable and identifiable from Lumber Liquidators records or documents.

64.     *Commonality*:  Questions of law and fact common to the Classes exist as to all members of the Classes and predominate over any questions affecting only individual members

of the Classes.  These common legal and factual issues include, but are not limited to the following:

a.    Whether Defendants' Hazardous Flooring products emit excessive levels of formaldehyde;

b.    Whether Defendants represented and warranted that their Hazardous Flooring products complied with their label descriptions;

c.    Whether Defendants omitted and concealed material facts from their communications and disclosures to Plaintiffs and the other Class Members regarding the illegal manufacturing, and design of their Hazardous Flooring products;

d.    Whether Defendants breached their express or implied warranties to Plaintiffs and the other Class Members with respect to their Hazardous Flooring products;

e.    Whether Defendants knew or should have known that their Hazardous Flooring did not conform to the label description;

f.    Whether Defendants violated Nevada's Deceptive Trade Practices Act, NRS 498 et seq.;

g.    Whether, as a result of Defendants' conduct, Plaintiffs and the other Class Members have suffered damages; and if so, the appropriate measure of damages to which they are entitled;

h.    Whether, as a result of Defendants' conduct, Defendants were unjustly enriched; and

i.    Whether, as a result of Defendants' misconduct, Plaintiffs and the other Class Members are entitled to equitable relief and/or other relief, and, if so, the nature of such relief.

65.    *Typicality*:  Plaintiffs' claims are typical of the other Class Members.  Plaintiffs and each of the other Class Members have been injured by the same wrongful practices of Defendants.  Plaintiffs' claims arise from the same practices and course of conduct that give rise to the other Class Members' claims and are based on the same legal theories.

66.    *Adequate Representation*:  Plaintiffs will fully and adequately assert and protect the interest of the other Class Members.  In addition, Plaintiffs have retained class counsel who is experienced and qualified in prosecuting class action cases similar to this one.   Neither Plaintiffs nor their attorneys have any interests contrary to or conflicting with other Class Members' interests.

67.    *Predominance and Superiority*:  This class action is appropriate for certification because questions of law and fact common to the members of the Class predominate over questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Class is impracticable.  Should individual Class Members be required to bring separate actions, this Court and Courts throughout Nevada would be confronted with a multiplicity of lawsuits burdening the court system while creating the risk of inconsistent rulings and contradictory judgments.  In contrary, to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this class action presents far fewer management difficulties while providing unitary adjudication, economies of scale and comprehensive supervision by a single court.

### FIRST CAUSE OF ACTION

#### (Negligence)

68.    Plaintiffs, on behalf of themselves and all others similarly situated, adopt and incorporate by reference all foregoing allegations as though fully set forth herein.

69.    Defendants had a duty to Plaintiffs and to members of the Class to manufacture, import, design and/or sell flooring that was free of excessive formaldehyde levels that would cause damages to Plaintiffs' person and property.

70.    Defendants had a duty to Plaintiffs and to members of the Class to test the Hazardous Flooring to ensure safe levels of formaldehyde for a reasonable period of use.

71.    Defendants had a duty to Plaintiffs and to Class Members to ensure that the Hazardous Flooring was suitable, whether by testing or by verifying third-party test results.

72.     Defendants had a duty to Plaintiffs and to members of the Class to ensure that the Hazardous Flooring complied with industry standards and all applicable building codes throughout Nevada.

73.     Defendants failed to exercise ordinary and reasonable care in the manufacture, import, design, and/or sale of the Hazardous Flooring and in determining where the Hazardous Flooring that it sold, and continues to sell, contained a latent defect that would result in dangerous and potentially life threatening levels of formaldehyde emissions.

74.     Defendants failed to exercise ordinary and reasonable case in the purchase and sale of the Hazardous Flooring and breached the foregoing duties.

75.     Defendants breached their duty to Plaintiffs and to Class Members to test the Hazardous Flooring to ensure safe levels of formaldehyde emissions for a reasonable period of use.

76.     Defendants breached their duty to Plaintiffs and to Class Members to ensure that the Hazardous Flooring was suitable, whether by testing or by verifying third-party test results.

77.     Defendants breached their duty to Plaintiffs and to Class Members to ensure that the Hazardous Flooring complied with industry standards and applicable building codes.

78.     Defendants breached their duty to Plaintiffs and to Class Members to forewarn purchasers, installers, and users regarding the known risk of formaldehyde emissions.

79.     The negligence of Defendants, their agents, servants, and/or employees include the foregoing, as well as the following acts and/or omissions:

    a.     Manufacturing designing, importing, processing, distributing, delivering, supplying inspecting, marketing and/or selling Hazardous Flooring without adequately and thoroughly testing them to all applicable standards and building codes;

    b.     Manufacturing designing, importing, processing, distributing, delivering, supplying, inspecting, marketing and/or selling Hazardous Flooring without adequately testing long term performance;

    c.     Negligently failing to ensure that the Hazardous Flooring conformed to all applicable standards, regulations, and building codes; and

d.      Concealing from Plaintiffs and the Class Members, information concerning the dangerous level of formaldehyde emissions that emanate from the Hazardous Flooring, while knowing that Defendants' Hazardous Flooring was defective and non-conforming with accepted industry standards and building codes.

80.     Plaintiffs and Class Members have been damaged because the Hazardous Flooring does not perform their ordinary purpose and emitted high levels of formaldehyde gas.

81.     Plaintiffs and the Class Members have also been damaged as a direct and proximate result of negligence, carelessness, recklessness, willfulness, and wantonness of Lumber Liquidators as aforesaid.

82.     As Defendants' conduct was grossly negligence, reckless, willful, wanton, intentional, and fraudulent or the like, Plaintiffs and the Class Members are entitled to an award of punitive damages against Defendants.

83.     Plaintiffs and the other Class Members are entitled to legal and equitable relief against Defendants, including damages, consequential damages, specific performance, rescission, attorney's fees, costs of suit and other relief as appropriate.

## SECOND CAUSE OF ACTION

### (Breach of Express Warranty)

84.     Plaintiffs, on behalf of themselves and all others similarly situated, adopt and incorporate by reference all foregoing allegations as though fully set forth herein.

85.     Defendants warranted that their flooring was free of defects when they sold those products to Plaintiffs and the members of the Class as described in this Complaint.  Defendants further represented that their flooring products complied with CARB formaldehyde standards and all applicable laws and regulations.  Plaintiffs and members of the Class reasonably relied upon these representations.

86.     Defendants' warranties became part of the benefit of the bargain.

87.     Defendants breached their warranties by:

a. Manufacturing, selling, and/or distributing flooring that exceeds CARB formaldehyde standards;

b. Manufacturing, importing, selling and or distributing flooring that fails to comply with all applicable laws and regulations; and

c. Refusing to honor the express warranties by refusing to properly repair and replace the defective flooring.

88. Plaintiffs, on behalf of themselves and the other Class Members, provided Defendants with timely notice of its breach of warranty. Defendants were also on notice regarding the excessively high levels of formaldehyde in its flooring from the Complaint and requests for refund they received from Class Members, Internet message boards and from published product reviews.

89. As a direct and proximate result of Lumber Liquidators' misconduct, Plaintiffs and the other Class Members have suffered damages and continue to suffer damages, including economic damages at the point of sale. Additionally, Plaintiffs and the other Class Members have either incurred or will incur economic damages in repairing and/or the cost of purchasing non-defective flooring to replace the Defendants' flooring.

90. Plaintiffs and the other Class Members are entitled to legal and equitable relief against Defendants, including damages, consequential damages, specific performance, rescission, attorney's fees, costs of suit and other relief as appropriate.

### THIRD CAUSE OF ACTION

### (Breach of Implied Warranties)

91. Plaintiffs, on behalf of themselves and all others similarly situated, adopt and incorporate by reference all foregoing allegations as though fully set forth herein.

92. At all times relevant hereto, there was a duty imposed by law which requires that a manufacturers' or sellers' of a product be reasonably fit for the purposes for which such products are used and that the product be acceptable in trade from the product description.

93.     Defendants breached this duty by selling flooring to Plaintiff and the other members of the Class that was not merchantable.

94.     Defendants were notified that their product was not merchantable within a reasonable time after the defect manifested itself to Plaintiffs and the members of the Class.

95.     Defendants also tested their products before sale and knew or should have known of the defective nature of the Hazardous Flooring.

96.     As a result of the non-merchantability of Lumber Liquidators' flooring described herein, Plaintiffs and other members of the Class sustained a loss or damages.

## FOURTH CAUSE OF ACTION

### (Violation of Nevada Deceptive Trade Practices Act)

97.     Plaintiffs, on behalf of themselves and all others similarly situated, adopt and incorporate by reference all foregoing allegations as though fully set forth herein.

98.     The conduct described above and throughout this Complaint took place within the State of Nevada and constitutes business practices in violation of Nevada Deceptive Trade Practices Act, NRS 598 et seq. ("DTA").

99.     The DTA applies to the claims of Plaintiff and all Nevada Class Members because the conduct which constitutes violations of the DTA by the Defendants occurred within the State of Nevada.

100.    The DTA prohibits unfair methods of competition and unfair and deceptive acts or practices, including among other things, "[f]ail[ing] [to] disclose a material fact in connection with the sale or lease of goods or services."

101.    Defendants engaged in the concealment, suppression, or omission in violation of the DTA when, in selling and advertising the Hazardous Flooring.

102.    Defendants knew that there were defects in the Hazardous Flooring which would result in dangerous levels of formaldehyde gas emissions.

103.    Defendants engaged in the concealment, suppression, or omission of the aforementioned material facts with the intent that others, such as Plaintiffs, Plaintiffs' Builders,

Class Members, Class Member's Builders, and/or the general public would rely upon the concealment, suppression, or omission of such material facts and purchase Defendants' Hazardous Flooring containing said defect.

104.   Plaintiffs, Plaintiffs' Builders, Class Members, Class Member's Builders would not have purchased the Hazardous Flooring had they known or become informed of the material defects in the Hazardous Flooring.

105.   Defendants' concealment, suppression, or omission of material facts as alleged herein constitute unfair, deceptive and fraudulent business practices within the meaning of the DTA.

106.   Defendants have acted unfairly and deceptively by misrepresenting the quality of the Hazardous Flooring.

107.   Defendants either knew, or should have known, that the Hazardous Flooring was defectively designed and/or manufactured and would emit unsafe levels of formaldehyde, which would result in severe damages to the Plaintiffs' person and property.

108.   Upon information and belief, Defendants knew that, at the time Hazardous Flooring left Defendants' control, the Hazardous Flooring contained the defect described herein resulting in dangerous levels of formaldehyde emissions.  At the time of sale, the Hazardous Flooring contained the defects.  The defects permit unsafe levels of formaldehyde gas emission and rendered the flooring unsuitable for use in the ordinary purposes for which it was intended, as well as the resulting damages described herein.

109.   As a direct and proximate cause of the violation of the DTA, described above, Plaintiffs and members of the Class have been injured as they have purchased homes or other structures with the unsafe and dangerous Hazardous Flooring based on nondisclosures of material facts alleged above.  Had Plaintiffs and Class Members known the defective nature of the Hazardous Flooring installed in their structures, they would not have purchased said structures.

110.   Defendants used unfair methods of competition and unfair or deceptive acts of practices in conducting their businesses.  This conduct constitutes fraud within the meaning of DTA.  This unlawful conduct is continuing, with no indication that Defendants will cease.

111.   As a direct and proximate result of Defendants' unfair and deceptive acts and practices, Plaintiffs and the other members of the Class will suffer damages, which include, without limitation, costs to inspect, repair or replace their flooring and other property, in an amount to be determined at trial.

112.   As a result of the acts of consumer fraud described above, Plaintiffs and the Class Members have suffered ascertainable loss in the form of actual damages that include the purchase price of the products for which Defendants are liable to the Plaintiffs and the Class Members for treble their ascertainable losses, plus attorneys' fees and costs, along with equitable relief prayed for herein in the Complaint.

## FIFTH CAUSE OF ACTION

### (Fraudulent Misrepresentation)

113.   Plaintiffs, on behalf of themselves and all others similarly situated, adopt and incorporate by reference all foregoing allegations as though fully set forth herein, specifically, those paragraphs as set forth above in Common Allegations Pertaining To Defendants' Fraudulent Scheme.

114.   Defendants falsely represented to Plaintiffs, the Class Members, and/or the consuming public, in general, that Defendants' products would be free from defects and fit for their customary and normal use.

115.   Defendants falsely represented to Plaintiffs, the Class Members, and/or the consuming public, in general, that Defendants' products would be free from defects and fit for their customary and normal use.

116.   Defendants' falsely represented to purchasers and/or consumers that the Hazardous Flooring was warranted against defects in material and workmanship when in fact

the Limited Warranty was so limited as to prevent and preclude any warranty protection against the known defect in the Hazardous Flooring.

117.   When said representations were made by Defendants, upon information and belief, they knew those representations to be false and they willfully, wantonly, and recklessly disregarded whether the representation were true.

118.   These representations were made by Defendants with the intent of defrauding and deceiving the Plaintiffs, the Class Members, and/or the consuming public, all of which evinced reckless, willful, indifference to the safety and welfare of the Plaintiffs, Class Members and/or the consuming public.

119.   At the time the aforesaid representations were made by Defendants, Plaintiffs and the Class Members were unaware of the falsity of said representation and reasonably believed them to be true.

120.   In reliance upon said representations, the Plaintiffs' and Class Members' properties were built using Defendants' Hazardous Flooring, which was installed and used on Plaintiffs' and the Class Members' properties thereby sustaining damage and injury and/or being at an increased risk of sustaining damage and injury in the future.

121.   Defendants knew and were aware that Defendants' Hazardous Flooring was defective and was not fit for their customary and normal use.

122.   Defendants knew and were aware that Defendants' Hazardous Flooring had a potential to, could, and would cause severe damage and injury to property owners.

123.   Defendants intentionally placed the Hazardous Flooring in the market and acted fraudulently, wantonly, and maliciously to the detriment of the Plaintiffs and the Class Members.

124.   By reason of the foregoing, Plaintiffs and the Class Members suffered and continue to suffer, financial damage and injury.

/ / /

/ / /

/ / /

## SIXTH CAUSE OF ACTION

### (Negligent Misrepresentation)

125.   Plaintiffs, on behalf of themselves and all others similarly situated, adopt and incorporate by reference all foregoing allegations as though fully set forth herein.

126.   Defendants made representations about the Hazardous Flooring to Plaintiffs, Class Members, and their agents or predecessors, as set forth in this Complaint.

127.   Those representations were false.

128.   When Defendants made the representations, they knew they were untrue or had a reckless disregard for whether they were true, or they should have known they were untrue.

129.   Defendants' knew that Plaintiffs, Class Members, and their agents or predecessors, would rely on the representations.

130.   In reliance upon the representations, Plaintiffs and Class Members purchased the Hazardous Flooring and installed it in the Plaintiffs' and Class Members' homes.

131.   As a direct and proximate result of Defendants' negligent misrepresentation, Plaintiffs and Class Members have been damaged as set for in this Complaint.

132.   As a direct and proximate result of the foregoing Plaintiffs and the Class Members suffered, and continue to suffer, financial damage and injury, and are entitled to all damages, including punitive damages, in addition to costs, interest and fees, including attorney's fees, as allowed by law.

## SEVENTH CAUSE OF ACTION

### (Fraudulent Omission/Concealment)

133.   Plaintiffs, on behalf of themselves and all others similarly situated, adopt and incorporate by reference all foregoing allegations as though fully set forth herein, specifically, those paragraphs as set forth above in Common Allegations Pertaining To Defendants' Fraudulent Scheme.

134.   Defendants knew that the Hazardous Flooring was defective in manufacture and design such that it was not fit for its ordinary and intended use, and performed in accordance

with neither the advertisements, marketing material and warranties disseminated by Lumber Liquidators nor the reasonable expectation of ordinary consumers.

135.   The Hazardous Flooring was marketed as safe, and of good quality free from defects, and that it would preform in its reasonably expected operation and/or use.

136.   Defendants intentionally failed to disclose to Plaintiffs and the Class Members that the Hazardous Flooring was defective.

137.   Defendants had exclusive knowledge of the defective nature of the Hazardous Flooring at the time of sale.   The defect is latent and not something that Plaintiffs or Class Members, in the exercise of reasonable diligence, could have discovered independently prior to purchase.

138.   Defendants had the capacity to, and did, deceive Plaintiffs and Class Members into believing that they were purchasing flooring free from defects.

139.   Defendants actively concealed the defect.   Plaintiffs are aware of nothing in Defendants' advertising, publicity or marketing materials that disclosed the truth about the defect, despite Defendants' awareness of the problem.

140.   The facts concealed and/or not disclosed by Defendants' to Plaintiffs and the Class Members are material facts in that a reasonable person would have considered them important in deciding whether to purchase the flooring.

141.   Defendants intentionally concealed and/or failed to disclose that the Hazardous Flooring was not compliant with the applicable regulations and standards for the purpose of inducing Plaintiffs and the Class Members to act thereon.

142.   Plaintiffs and the Class Members justifiably acted or relied upon the concealed and/or non-disclosed facts to their detriment, as evidence by their purchase of the Hazardous Flooring.

143.   Plaintiffs and Class Members suffered a loss of money in an amount to be proven at trial as a result of Defendants' fraudulent concealment and nondisclosure because: (a) they would not have purchased the Hazardous Flooring on the same terms if the true facts concerning the defective flooring had been known; (b) they paid a price premium due to the fact

that the flooring would be free from defects; and (c) the flooring did not perform as promised. Plaintiffs also would have initiated this suit earlier had the defect been disclosed to them.

144.   By reason of the foregoing, Plaintiffs and the Class Members suffered, and continue to suffer damages and injury.

145.   Plaintiffs and the Class Members suffered, and continue to suffer, financial damage and injury, and are entitled to all damages, including punitive damages, in addition to costs, interest and fees, including attorney's fees, as allowed by law.

### EIGTH CAUSE OF ACTION

**(Unjust Enrichment)**

146.   Plaintiffs, on behalf of themselves and all others similarly situated, adopt and incorporate by reference all foregoing allegations as though fully set forth herein.

147.   Plaintiffs and Class Members conferred a benefit on Defendants when they purchased the Hazardous Flooring.

148.   Defendants' have been unjustly enriched in retaining the revenues derived from Plaintiffs' and Class Members' purchases of the Hazardous Flooring, the retention of which under these circumstances is unjust and inequitable because Defendants' Hazardous Flooring is defective in manufacture and design, and not fit for its ordinary and intended use.  It did not perform in accordance with advertisements, marketing materials or warranties disseminated by Defendants.  Nor did it meet the reasonable expectation of ordinary consumers and caused the Plaintiffs and Class Members to lose money as a result thereof.

149.   Plaintiffs and Class Members suffered a loss of money as a result of Defendants' unjust enrichment because: (a) they would not have purchased the Hazardous Flooring on the same terms if the true facts concerning the unsafe Hazardous Flooring had been known; (b) they paid a price premium due to the fact that Hazardous Flooring would be free from defects; and (c) the Hazardous Flooring did not perform as promised.

150.   Because Defendants' retention of the non-gratuitous benefit conferred on them by Plaintiffs and Class Members is unjust and inequitable, Defendants must pay restitution to Plaintiffs and the Class Members for their unjust enrichment, as ordered by the Court.

151.   Plaintiffs and the Class Members are entitled to restitution of, disgorgement of, and/or the imposition of the constructive trust upon, all profits, benefits, and other compensation obtained by the Defendants from their deceptive, misleading, and unlawful conduct.

## NINTH CAUSE OF ACTION

### (Violation of the Magnuson-Mass Warranty Act)

152.   Plaintiffs, on behalf of themselves and all others similarly situated, adopt and incorporate by reference all foregoing allegations as though fully set forth herein.

153.   Plaintiffs and the other Class Members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

154.   Defendants are "suppliers" within the meaning of 15 U.S.C. § 2301(4).

155.   Defendants are "manufacturers" within the meaning of 15 U.S.C. § 2301(5).

156.   The Hazardous Flooring is a "consumer product" within the meaning of 15 U.S.C. § 2301(1).

157.   Defendants' express warranties and written affirmations of fact regarding the nature of the flooring, including that the flooring was free from defects, was in compliance with CARB formaldehyde standards, and all other applicable laws and regulations, constitute written warranties within the meaning of 15 U.S.C. § 2301(6).

158.   Defendants breached their warranties by:

a.   Manufacturing designing, importing, processing, distributing, delivering, supplying inspecting, marketing and/or selling flooring that violated CARB formaldehyde standards;

b.   Manufacturing designing, importing, processing, distributing, delivering, supplying inspecting, marketing and/or selling flooring that fails to comply with all applicable laws and regulations; and

c.      Refusing to honor the express warranties by refusing to properly repair or replace the defective flooring.

159.   Defendants' breach of their express warranties deprived Plaintiffs and the other Class Members of the benefits of their bargains.

160.   As a direct and proximate result of Defendants' breaches of their written warranties, Plaintiffs and the other Class Members sustained damages in an amount to be determined at trial.  Defendants' conduct damaged Plaintiffs and the other Class Members, who are entitled to recover damages, consequential damages, specific performance, diminution in value, costs, attorney's fees, rescission, and/or other relief as appropriate.

### **TENTH CAUSE OF ACTION**

### **(Declaratory Relief 28 U.S.C. § 2201)**

161.   Plaintiffs, on behalf of themselves and all others similarly situated, adopt and incorporate by reference all foregoing allegations as though fully set forth herein.

162.   Defendants have acted or refused to act on grounds that apply generally to a Declaratory Relief Class, thus injective relief or corresponding declaratory relief is appropriate as to the Class as a whole within the meaning of Fed. R. Civ. P. 23(b)(2). Plaintiffs seek a ruling that:

a.      The Hazardous Flooring has a defect which results in unsafe levels of formaldehyde emissions.  The defect may not be detectable until after the warranty provided by Defendants has expired.  The Court finds that this defect is material and requires disclosure for all of this flooring;

b.      The Hazardous Flooring has a defect in workmanship and material that allows for unsafe levels of formaldehyde emissions.  The defect may not be detectable until after the warranty provided by Defendants has expired.  The Court declares that all person who own structures containing Hazardous Flooring are to be provided the best practicable notice of the defect, which cost shall be borne by Defendants;

c.      Certain provisions of Defendants' warranty are void as unconscionable;

1        d.  Defendants' shall re-audit and reassess all prior warranty claims, including

2    claims previously denied in whole or in part, where the denial was based on warranty or on other

3    grounds, and pay the full cost of repairs and damages; and

4        e.  Defendants' will establish an inspection program and protocol under Court

5    supervision to be communicated to Class Members, which will require Defendants' to inspect,

6    upon request, a Class Member's structure to determine whether formaldehyde emissions levels

7    are safe in each such inspected structure.  Any disputes shall be adjudicated by a Special Master

8    appointed by the Court and/or agreed to by the Parties.

9    / / /

10   / / /

11   / / /

12   / / /

13   / / /

14   / / /

15   / / /

16   / / /

17   / / /

18   / / /

19   / / /

20   / / /

21   / / /

22   / / /

23   / / /

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

### **PRAYER**

**WHEREFORE**, Plaintiffs pray for relief as follows:

1.     For an order certifying the Classes, pursuant to Fed. R. Civ. P. 23, appointing Plaintiffs as representatives of the Classes, and appointing the law firm representing Plaintiffs and Class Counsel;

2.     For compensatory damages sustained by Plaintiffs and the Damages Class;

3.     For equitable and/or injunctive relief for the Declaratory Relief Class;

4.     For payment of costs of suit herein incurred;

5.     For both pre-judgment and post-judgment interest on any amount awarded;

6.     For punitive damages;

7.     For payments of reasonable attorney's fees and expert fees as may be allowable under applicable law; and

8.     Any other award as the Court deems just and proper.

Dated this 16th day of March, 2015.

PATTI, SGRO, LEWIS & ROGER

By:     */s/ Adam C. Anderson*
Anthony P. Sgro, Esq.
Nevada Bar No. 3811
Stephen K. Lewis, Esq.
Nevada Bar No. 7064
Adam C. Anderson, Esq.
Nevada Bar No. 13062
720 S. 7th Street, 3rd Floor
Las Vegas, Nevada 89101
Attorneys for Plaintiffs